The opinion of the Court was delivered by
Wardlaw, J.
The South Carolina Railroad Company by an Act of 1843 (11 Stat. 273,) has all the 'rights and privileges which belonged to either the South Carolina Canal and Railroad Company under its charter of 1828, (8 Stat. 355,) or to the Louisville, Cincinnati and Charleston Railroad Company under its charter of 1835, (8 Stat. 409.) An examination of these charters will show that the right to keep up and employ the railroad is given in the same breath as the right to make it: and that the powers of acquiring lands by purchase or otherwise, extend not less to the purposes of varying and altering plans, and of obtaining materials for repairing and sustaining the road and its appurtenances, than to the purposes of an original location and construction, and embrace accommodations for all agents, those subsequent as well as those first employed, 1828, sec. 1, 9, 10, 14; 1835, see. 32.
The first two grounds of appeal are then considered untenable.
Portions of the other grounds challenge a claim made by the company, and invoke the aid of the Court to restrain it. The company applies to the Court for appointment of Commissioners to assess the compensation which shall be paid for a parcel *234 of land: the land-owner, unwilling to sell for a fair price, says that the parcel-is not needed for any of the purposes for which the company is authorized to acquire lands without consent of the owners. The company in effect s&ys, that it must he the judge of what it needs, that it demands to have the parcel upon payment of the value duly assessed, and that the business of the Court is merely to' select the Commissioners, and, if their valuation should not be satisfactory, to have a new valuation made.
The question involved is connected with great principles of public law about which there might be much debate; but when the point in dispute has been developed by a glance at those principles, its decision may be rested upon the provisions of the charters before mentioned. ■
The eminent domain pertains to sovereign power. In this State it is regulated by no constitutional provision, besides the general safe-guards of a freeman’s rights. It is exercised by the legislature, as the trustee of all powers not prohibited or elsewhere vested. The same public law which establishes its existence, must be appealed to for its terms and limitations.
Without -purpose of public good, property could not against the will of the owner be transferred from him to another person, no matter at what price, even by legislative authority. The purpose of public good affords, then, -a measure for the extent to which the eminent domain may be carried. But to the legislative determinations concerning the propriety of the occasion for its exercise — the subjects upon which it shall fall, the mode, the extent and the conditions of its exercise, good faith must be imputed, and all the intendments be made, which are essential to' the validity of these determinations, and not inconsistent with their expression.
The legislature must necessarily entrust the execution of its . determinations to agents, either natural or artificial persons, either mere public functionaries, or persons having private interests coupled with their public duties. But nothing short *235 of the sovereign will, indicated by the legislature, can justify the invasion of the private right of property even' for public good. To some general regulation or special enactment, every agent who takes property without the assent of the owner must then be able to point for his authority: and this in reference to every particular taken, for excess is the same as the absence of authority. W hen the legislature has in some way decided that a purpose is one of such necessity or public utility, as to justify the intervention of sovereign power to supersede private right, and, not having specifically designated the articles to be taken, has authorized the taking, from many included in a general description, of enough to satisfy the purpose, a discretion in the selection of sufficient particulars may be entrusted to an agent appointed to execute the legislative determinations. Where necessity forbade delay, and there has under such discretion been an actual application of a certain particular to the appointed purpose, there can be no imputation of excess ; and private right is invaded no more than public good requires, if it is permitted to reattach to whatever may remain after the purpose has been served. Where the circumstances permit a preliminary inquiry, and that is directed, the discretion of a mere public functionary in a previous estimate of what the purpose may require, may, with reservation of private right to what may remain after actual application to the purpose, be safely trusted, for no interest would be opposed to that of the proprietor. But in such a ease, an agent who might derive advantage from the abuse of his discretion, would be liable to suspicion; and if there was no reservation of the proprietor’s right to the remainder, the force of the objection would be much increased.
The South Carolina Railroad Company is an agent to which the State has granted large powers for the making and management of an improved highway, and for the exertion of the eminent domain to effect these ends. Considerations of the public good moved and justified the legislature in its grants to the *236 company — but the company is a private one, supposed to look directly to the interest of its .stockholders, and to regard the public good as only a necessary incident of their success. It owns for itself the property which it acquires, and is readily capable of designs and conduct hurtful either to the whole community or to particular individuals.
The right to purchase and hold lands, in fee or for a term of years, has been granted to the company sub modo. (1828, See. 9; 1835, See. 32.) This is its license in mortmain. It is not limited by the amount in quantity or value, but is confined to the lands necessary for the particular uses specified in the grant. These uses may be said, in general, to be the making and sustaining of the contemplated highway. The necessity must be direct. The indirect contribution to these uses, which might result from an advantageous speculation in lands not specifically needed, and applied to any of the uses, would not comport with the manifest intention to limit the license which appears from the enumeration of the uses in the Act of 1828, nor with the express words of negation “ for no other purpose whatever,” which are in the Act of 1835.
The right to take land at the assessed value under the eminent domain of the State, is also conferred upon the company with special qualifications. In the Act of 1835, this right seems to be confined to the purpose of constructing as distinguished from repairing and sustaining, and of constructing the road as distinguished from the buildings and offices appurtenant thereto. But by the Act. of 1828, the right of taking is co-extensive with the right of purchasing, and like the latter, is limited by the uses or purposes specified.
The 36th Sec. of the Act of 1835, enacts, that in the absence of any contract, it shall “ be presumed that the land upon which the road may be constructed, together with the space of one hundred feet on each side of the centre ofthe road, (or track,) has been granted to the company by the owner; and the company shall have good right and title thereto, and shall have, *237 hold, and enjoy the same, so long as the same may be used for the purposes of the said road, and no longer,” unless the owner apply for an assessment within five years. Here is, in the absence of a contract defining a smaller space, a declaration of the legislative judgment, that one hundred feet on each side shall not be considered excessive for the uses of the road ; here is a saving of the right of the owner to the remainder after the purpose for which the prescribed space was granted has ceased to require it; here is only a qualified fee vested in the company ; and here is a necessity imposed upon the landowner, of acknowledging the company’s right to take, by himself making application for assessment, if he would not be forever barred from both land and compensation.
The entry of the company, and the laying of its track, without previous contract with the owner, are contemplated in this section, and not in this alone; for a previous section of the Act of 1835, (the 35th,) and the 10th Section of 1828, from which that previous section was copied, show that in all cases where the company is authorized to acquire lands under the eminent domain, it may enter and enjoy it for the use which requires it, before assessment had. Title does not vest in the company until the assessed value has been paid or tendered, but the work for which the land is needed may proceed, notwithstanding the delay of the assessment by appeal of either party. After entry of the company, application for assessment may be made by either party; the application of the land-owner necessarily involving his acknowledgment of the right of the company to take the parcel which is in its possession. In all eases where the compensation, assessed upon the application of either party, has been paid or tendered, the title 'which’vests in the company is an absolute fee simple. (1828, Sec. 10 ; 1835, Sec. 35.) And all the property and estates of the company are forever exempted from taxation. (1835, Sec. 43.) The question which we are now considering concerning the right to have an assessment made, can arise only *238 when the application has been made by the company. If the company should have entered and the land-owner should desire to controvert the right of entry, because he denies that the land is needed for any of the uses which would justify its being taken, he may, by action of trespass, by bill for injunction or other suitable proceeding, have a trial of the right. If the land should lie within one hundred feet of -the track, and the company should desire to have the value fixed before it proceeds with the work, or to acquire an earlier or a better title than that which would be presumed under the 36th Section of the Act of 1835, the presumption of necessity established by that section would prevent all question of right, where there had been no previous contract defining a narrower space. But where the parcel is more than one hundred feet from the track, or'being within the one hundred feet, is beyond the limits of a previous contract, and the company making application for assessment, is met by a denial of its right, who shall judge whether the parcel is needed for any of the prescribed uses ?
The company says that it must judge, that no other person can know its schemes and wants, that the land-owner’s rights are made safe by the provisions for compensation, and that the words of the Acts are, “ where lands may be required by the said company for the purposes aforesaid, they may be taken at valuation.” ^
The recognition of this claim of the company would produce some strange inconsistencies. If land taken professedly for a public purpose is vested absolutely in a private agent, what is not needed for the purpose becomes his; to authorize him to take whatever he may say the purpose needs, is to subject the right of property to his good pleasure, and finally, to rest the eminent domain upon private interest instead of public'good. Again, lands purchased by the company beyond the purposes which limit its license in mortmain, may, by suitable proceedings, be forfeited to the State ; if by application for assessment the company may go beyond these purposes, we must conclude, *239 either that against the will of the land-owner the company may acquire an indefeasible title to what it could not hold under a regular conveyance from him, or that under the eminent domain a title shall be transferred which instantly would be liable to forfeiture for usurpation; and if the latter, the transfer would be made through the aid of the Court that might be called on to declare the forfeiture, and by the power of the State to whose benefit the forfeiture would enure.
If the mere assertion of the company, that a parcel is required for some of the specified uses is to be conclusive, then upon such assertion,' the company might enter upon any lands that a hope of profitable speculation would induce it to take, and after paying the value, hold them exempt from taxation until gain could be realized by their sale; no aetion of trespass would lie, for the taking would be lawful; no prohibition to restrain either the company or the commissioners would lie, for both would be acting within the bounds of delegated power; no injunction could rightly arrest the regular exercise of lawful discretion, and the whole real estate of the State would be subject to the schemes of private cupidity, without regard to public interest or proprietary right, protected only by an obligation imposed upon the company to pay a fair price fixed by sworn commissioners selected for their integrity.
If the company’s assertion of right should not be conclusive, there must be some trial. It may be a complicated fact that would be involved, but other issues not less complicated, are presented in other cases, and the same evidence that ought to satisfy a boarcf of directors, or a convention of stockholders, of the propriety of a purchase within the competency of the company, would serve to satisfy a court of the needfulness of the article for some of the same purposes for which a purchase might rightfully be made.
If the difficulty of the matter should suffice to withdraw it from all investigation, and to make the allegation of the company conclusive, then under the most extreme ■ case that *240 might be imagined, nothing would be allowed to contradict the assertion made by the company in its application. Even if it should be made to appear from a journal of the company’s proceedings, that a parcel was wanted only for a speculation, or even for some malicious gratification, yet if the application should say that it was required for some of the specified purposes, the truth would not be allowed to prevail over the unassailable averment of falsehood.
The payment of adequate compensation is far from justifying the taking of land without the consent of the owner, in an improper case. That payment is the condition of the taking •where it is most proper, but can by no means supply the consideration of public good, which is the indispensable prerequisite for exertion of the eminent domain. The owner’s right is to enjoy his own at his own pleasure, to place upon it the most fanciful value, or to refuse altogether to sell; an assessment is a fair estimate of the value made by persons, expected to be of impartiality and good judgment; the greatest violence to the feelings and interest of the owner might be done by compelling him to take a fair price, and the greatest advantage might be given to another by enabling him to acquire for the just value. Sovereign power is not invoked to compel agreement between the opposing views of buyer and seller, but to control private rights standing in the way of public good.
“Required for the purposes,” is different from required, and seems to admit the examination that must result from a denial of the purpose for which the thing is required: and this, if required, has the same meaning as demanded. But required, as used in the charters of this Company, means not simply demanded, but needed and desired. The appointment of Commissioners and all subsequent proceedings, depend upon the occasion which authorizes resort to them, that is, that the land is required by the Company for some of the purposes specified. The appointment is given to the Court of Common Pleas, a body which exercises judicial power, and may "decide all questions of *241 law or fact, upon which the rights of parties depend. The power of appointment might no douht have been vested in another body or other officer, and in that case, upon denial of the right, there might have been stay, by prohibition or other suitable proceeding, until the occasion which gave jurisdiction of appointment was found to exist. But the power having here been given to the Court which exercises 'general jurisdiction, this choice may well be supposed to have been made, not more in reliance upon the integrity of the tribunal, than upon its power to decide all questions, preliminary, incidental and direct, which might arise. The Court owes it to itself then to look to the propriety of the occasion, for exercising the special duties committed to it, when that propriety is denied: not rashly to assume as true what is denied, or as incontrovertible what might well be tried: nor, by considering those duties ministerial which may well call forth judicial functions, to subject all that it does to injunction and implied reproof, because it will not itself make those investigations which parties may procure to be elsewhere made.
"VVe intend not by what we have said to overrule the case of Oppenheim, 2 Rich. 434, We take with the opinion pronounced in that case only the same liberty which in that opinion was taken with the opinion pronounced by Judge Richardson in the ease of the State vs. Tupper, Dud. 135; the decision is maintained — unnecessary argument is reconsidered. In Oppenheim's case, although the Circuit opinion of Judge Frost was conformable to the present views of the Court, and discussed no question besides the right of the Company to demand appointment of Commissioners without preliminary enquiry, and although Judge Butler in- the opinion of the Court controverted Judge Frost’s argument, and decided in favor of the right then and now claimed by the Company: yet the case really turned upon the right of the Company under an Act of 1832, to take land for altering its track, after having previously laid down one track. No other ground of opposition was in that case pre *242 sented by the land-owner in his answer to the application, and, although, another ground was assumed by him in argument, his neglect to traverse the propriety of the occasion was, by at least one member-of the Court who concurred in the result, held to be an admission of that propriety.
It follows, that the application of the Company should set forth the particular purpose for which the land specially described is needed, and should be accompanied by affidavits or other evidence satisfactory to the Court, showing that the occasion contemplated by the charter exists for the interference of the Court. If the land-owner should not traverse the propriety of the occasion or its existence, these matters will be admitted as alleged; but, if he should traverse, a preliminary trial and decision by the Court must be had. The mode of trial is not now under consideration.
The motion is granted, and the order which was made by Judge Glover is set aside.
Withers, Whitner and Munro, JJ., concurred.
Glover, J., absent at the hearing.
O’Neall, J., dissented.

Motion granted.